**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Mary Rose Arellano, | No. CV-26-00770-PHX-SMB |
| Plaintiff, | **ORDER** |
| v. | |
| Copart Incorporated, | |
| Defendant. | |

Before the Court are Plaintiff's Application for Leave to Proceed In Forma Pauperis (Doc. 14); Plaintiff's Motion to Remand (Doc. 15); and Defendant's Motion to Dismiss (Doc. 21). The Court **grants** Plaintiff's Application, **denies** Plaintiff's Motion to Remand, and **grants** Defendant's Motion to Dismiss for the reasons below.

## I.    BACKGROUND

Plaintiff appears pro se. Her Complaint alleges as follows. On March 8, 2024, Plaintiff purchased a 2012 Hyundai Sonata from Defendant on an online auction. (Doc. 1-1 at 3.) Defendant advertised the price of the vehicle as $1,500 but ultimately charged Plaintiff $2,520.40. (*Id.*) Plaintiff asserts that Defendant overcharged her $279 because her bill of sale only showed payment for $2,241.40. (*Id.* at 4.) When challenged, Defendant explained this difference was due to separate fees combined with the transaction. (*Id.*)

Plaintiff then alleges Defendant engaged in a series of systematic accounting irregularities, citing: "duplicate invoice numbers for different transactions"; "duplicate

refund invoice numbers across separate transactions"; "phantom charges and refunds appearing on receipts but not reflected in actual bank statements"; and "double billing practices without corresponding financial institution records." (*Id.*)  In support of these allegations, Plaintiff describes receiving receipts from Defendant where one used the same number under invoice and refund, and another used the prior receipts invoice number under refund. (*Id.* at 5.)  These receipts also contained conflicting payment and refund entries irreconcilable with actual banking records. (*Id.*)

Next, Plaintiff alleges Defendant misrepresented the vehicle as operational and roadworthy by advertising "Buy It Now" and listing the vehicle as "Run & Drive." (*Id.* at 3, 6–7.)  The vehicle also did not display a "Buyers Guide," indicating whether it was sold "as is" or with warranty. (*Id.* at 8.)  When Plaintiff attempted to pick up the vehicle at Defendant's facility, the vehicle was "completely inoperable and undriveable due to major undisclosed mechanical defects, including complete engine failure, transmission problems preventing gear engagement, and electrical system failures." (*Id.*)  Specifically, the vehicle would not start, requiring Plaintiff's mother to purchase a new battery. (*Id.* at 7.)  Even after replacing the battery, the vehicle only traveled a few feet before emitting smoke and becoming completely inoperable while on Defendant's premises. (*Id.*)  Defendant did not offer any assistance or refund, insisting the sale was "as-is." (*Id.*)  Defendant then, without authorization, towed the vehicle to Plaintiff's address, abandoning it on the street. (*Id.* at 9.)

Plaintiff then sent Defendant a formal complaint letter regarding the unauthorized transportation and abandonment of the vehicle. (*Id.*)  Defendant responded with an email stating that a subcontractor would retrieve the vehicle. (*Id.*)  Though Plaintiff did not consent to this plan, Defendant repossessed the vehicle. (*Id.*)  Defendant emailed Plaintiff, guaranteeing a refund once the car was back on its lot. (*Id.*)  However, Defendant instead offered to either have the vehicle towed back to Plaintiff, or for Plaintiff to surrender the vehicle in exchange for a partial refund.[1] (*Id.*)

---

[1] It appears the partial refund was for $2,241.40 but not the additional $279 in fees.

Plaintiff reported Defendant to the Yuma Police Department, but they labeled it as a civil matter and refused to investigate for possible criminal conduct. (*Id.* at 10.) Plaintiff then made repeated demands to Defendant for either a full refund or delivery of a promised operational vehicle. (*Id.* at 11.) Defendant refused. (*Id.*)

Plaintiff initially filed her Complaint in state court, asserting five counts:

- Count I: Violation of Arizona Consumer Fraud Act
- Count II: Breach of Contract / Breach of Good Faith and Fair Dealing
- Count III: Fraud, Theft by Conversion, and Extortion
- Count IV: Violations of Federal Trade Commission Act and FTC Used Car Rule
- Count V: Racketeering, Wire Fraud, and Systematic Billing Fraud

(*Id.* at 13–22.)

Defendant subsequently removed the case to federal court, and now moves for dismissal pursuant to Federal Rules of Civil Procedure 12(b)(6). (Doc. 21 at 2.)

## II.   LEGAL STANDARD

To survive a Rule 12(b)(6) motion for failure to state a claim, a complaint must meet the requirements of Rule 8(a)(2). Rule 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief," so that the defendant has "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). This notice exists if the pleader sets forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

Dismissal under Rule 12(b)(6) "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). A complaint that sets forth a cognizable legal theory will survive a motion to dismiss if it contains sufficient factual matter, which, if accepted as true, states a claim to relief that is "plausible on its face."

*Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Plausibility does not equal "probability," but requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility . . . .'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In ruling on a Rule 12(b)(6) motion to dismiss, the well-pleaded factual allegations are taken as true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). However, legal conclusions couched as factual allegations are not given a presumption of truthfulness, and "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998). A court ordinarily may not consider evidence outside the pleadings when ruling on a Rule 12(b)(6) motion to dismiss. *See United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003). "A court may, however, consider materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *Id.* at 908.

## III.    DISCUSSION

The Court first addresses Plaintiff's Motion to Remand.

### A.  Motion to Remand

Removal was proper. Plaintiff alleges violations of federal and state consumer protection laws. Therefore, the Court has federal question jurisdiction over Plaintiff's federal claims, and supplemental jurisdiction over her parallel state claims. Even so, Plaintiff argues removal is barred by Defendant's forum selection clause. (Doc. 15 at 3.) That clause reads: "Any action or proceeding arising directly or indirectly out of a vehicle bid or purchase transaction shall be conducted in the state/province and county where the vehicle was located at the time the bid was entered or the purchase transaction was consummated." (*Id.*) Notably, this clause only circumscribes the forum to Arizona—not a particular court system within the state. Therefore, this Court's federal question

jurisdiction does not violate Defendant's forum selection clause.

The Court finds Plaintiff's remaining arguments are either meritless or inapposite to analyzing jurisdiction. For example, Plaintiff contends Defendant acted in bad faith by requesting an extension of time to respond to Plaintiff's Complaint, and then, instead of filing a response, removed the case to federal court. (*Id.* at 5.) Or Plaintiff contends removal violates her constitutional right of access to courts because the federal system "discriminates against pro se litigants, requiring judicial permission for electronic access while attorneys receive automatic filing privileges." (*Id.* at 6.) The Court rejects both arguments wholesale.

Accordingly, the Court denies Plaintiff's Motion to Remand, which includes a Motion for Constitutional Relief and Motion for Attorneys' Fees.[2]

**B. Motion to Dismiss**

The Court now turns to Plaintiff's five claims, beginning with the ACFA.

1. *ACFA*

Under the ACFA, it is unlawful for any person to use "any deception, deceptive or unfair act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely on such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise." A.R.S. § 44-1522(A). Plaintiff alleges Defendant violated the ACFA by: (1) falsely advertising the vehicle's condition; (2) deceptively pricing the vehicle as $1,500; (3) failing to disclose material defects of the vehicle; (4) refusing to provide a refund or honor purchase obligations; (5) unlawfully repossessing the vehicle; (6) issuing unauthorized refunds to third parties without her consent; and (7) misrepresenting the vehicle history and title status in violation of A.R.S. § 28-2531(c)[3]. (Doc. 12-1 at 13–14.)

---

[2] Plaintiff appears pro se so she cannot be awarded attorneys' fees. *See Kay v. Ehrler*, 499 U.S. 432, 435 & n.5 (1991).

[3] Section 28-2531 is a criminal statute with no accompanying private action. *See Strong Cmtys. Found. of Ariz. Inc. v. Yavapai County*, No. 1 CA-CV 25-0310, 2026 WL 1092156, at *3 (Ariz. Ct. App. Apr. 22, 2026). Therefore, Plaintiff may not premise any claim on this statute.

The ACFA statute of limitations is one year.  A.R.S. § 12-541(5); *see also Teran v. Citicorp Pers.-to-Pers. Fin. Ctr.*, 706 P.2d 382, 389 (Ariz. Ct. App. 1985).  Plaintiff missed this deadline.  Plaintiff's ACFA claims began accruing when she knew or should have known "of both the *what* and *who* elements of causation."  *Alaface v. Nat'l Inv. Co.*, 892 P.2d 1375, 1379 (Ariz. Ct. App. 1994) (citation modified) (emphasis in original).  Plaintiff's Complaint states that "[t]he extent of the vehicle's defects was immediately apparent during attempted pickup at Defendant's Phoenix facility" on March 8, 2024.  (Doc. 12-1 at 6.)  The emails Plaintiff attached to her Complaint show she refused a refund and return of the battery her mother purchased in May 2024.  (Doc. 12-1 at 35–36.)  Consequently, all ACFA claims expired by May 2025.  Yet Plaintiff filed her Complaint on October 17, 2025.  (Doc. 12-1 at 2.)

Accordingly, the Court dismisses Plaintiff's ACFA claims with prejudice because they are barred by the one-year statute of limitations.

2. *Breach of Contract and Breach of Good Faith and Fair Dealing*

Plaintiff claims Defendant breached its contractual obligations, and accompanying duty of good faith and fair dealing, by: (1) failing to deliver an operational vehicle as advertised; (2) failing to disclose defects prior to sale; (3) unlawfully seizing the vehicle from Plaintiff's possession after purchase; (4) failing to transfer title ownership upon payment; (5) and improperly denying Plaintiff's demands for remedies.  (Doc. 12-1 at 15.)  Notably, Plaintiff does not cite any contractual provision to support this claim.  Instead, she relies entirely on Defendant's marketing of the vehicle as "Run & Drive" to constitute a binding promise of functionality.  (*Id.* at 7.)  This theory fails on its face.

Plaintiff cites and attaches the Defendant's Terms and Glossary to argue "Run & Drive" was a promise that the vehicle "started under its own power" and "moved forward." (Doc. 12-1 at 7.)  But that same attachment expressly disclaims this construction.[4]  It reads:

**Run & Drive:** At the time the vehicle arrived at Copart's location, Copart

---

[4]  "If an exhibit attached to a complaint contradicts an assertion in the complaint, the information provided in the exhibit trumps the allegation in the complaint."  *Martinez v. Eastside Fire & Rescue*, No. 2:24-CV-01706-TL, 2025 WL 1654649, at *4 (W.D. Wash. June 10, 2025) (citation modified).

- 6 -

verified that the vehicle (i) started, (ii) could be put into gear and (iii) was capable of moving forward under its own power. . . . There is no guarantee, representation or warranty that the vehicle will (i) start, (ii) drive or (iii) move forward under its own power at the time the vehicle is picked up at Copart's location.

(Doc. 12-1 at 94; Doc. 21-1 at 15.)   Therefore, Plaintiff cannot premise her breach of contract claim on a promise Defendant expressly disclaimed.  Plaintiff's remaining theories of breach are fatally vague.  Plaintiff does not connect Defendant's alleged failure to disclose defects, unauthorized repossession of the vehicle, refusal to transfer tile, and refusal to comply with her requested relief with a contractual obligation or promise. Without such, allegations of breach alone are insufficient.

Next, Plaintiff fails to plead a breach of the implied covenant of good faith and fair dealing.  This covenant is implied in every contract and is a promise that "neither party will act to impair the right of the other to receive the benefits which flow from their agreement or contractual relationship." *Bike Fashion Corp. v. Kramer*, 46 P.3d 431, 434 (Ariz. Ct. App. 2002) (quoting *Rawlings v. Apodaca*, 726 P.2d 565, 569 (Ariz. 1986)).   Put differently, "this obligation preserves the spirit of the bargain rather than the letter and guarantees the protection of the parties' reasonable expectations." *Id.* (citation modified). Given Defendant's express disclaimer of operability at pickup, Plaintiff's contrary expectations were not reasonable.

The Complaint states: "Plaintiff made repeated demands to Defendant for either a full refund or delivery of the operational vehicle as promised, which Defendant refused without legal justification.  Defendant's refusal constituted bad faith dealing and a breach of the implied covenant of good faith and fair dealing required under Arizona contract law." (Doc. 12-1 at 11.)  Plaintiff is incorrect.  Defendant did not promise Plaintiff an operational vehicle; the Court cannot construe the implied covenant as promising otherwise. *Bike Fashion Corp.*, 46 P.3d at 434 ("[A]n implied covenant of good faith and fair dealing cannot directly contradict an express contract term.").   Therefore, Plaintiff's only reasonable expectation was either a refund or a return of the vehicle she purchased. In an email to Plaintiff, Defendant offered these options: "A) You can have the car and the

title. B) We can refund you what you paid for the car and you can take the battery." (Doc. 12-1 at 35.) Plaintiff refused, demanding *both* a refund and title to the vehicle. (*Id.* at 36.) Therefore, there are no allegations to suggest Defendant denied Plaintiff what she could reasonably expect when purchasing a "Run & Drive" vehicle from an online auction.

Accordingly, the Court will dismiss Plaintiff's breach of contract claim and breach of the implied covenant of good faith and fair dealing claim with leave to amend.

### 3. *Fraud, Theft by Conversion, and Extortion*

Count III asserts claims for fraud, conversion, and extortion. The Court finds that Plaintiff fails to adequately plead each claim.

Plaintiff alleges Defendant "engaged in fraudulent misrepresentation by knowingly advertising the vehicle as operational and roadworthy when Defendant knew or should have known of the vehicle's major mechanical defects that rendered it completely inoperable." (Doc. 12-1 at 16.) She adds that she "reasonably relied on Defendant's representations regarding the vehicle's condition and operability, as confirmed by Defendant's own terms and conditions requiring such reliance." (*Id.*) For the reasons discussed above, the Court dismisses this claim. Again, Defendant expressly disclaimed any representation that the vehicle was operable. Accordingly, because Plaintiff's claim rests entirely on Defendant's allegedly fraudulent representation of operability, the Court dismisses this claim with prejudice.

Next, Plaintiff alleges Defendant's "unauthorized repossession and continued possession of the vehicle after purchase constitutes unlawful theft by conversion under Arizona law." (*Id.*) Again, Plaintiff's exhibits contradict this framing. After Defendant transported the vehicle to Plaintiff's address, she sent an email complaining that Defendant left an inoperable vehicle at her house. She wrote: "Which let me remind you you have brought it to Yuma and you expect me do with a vehicle that will not go in gear or turn on." (Doc. 12-1 at 25–26.) In that same email, she requested "Copart immediately refund the full $2,520.40," and provide "a vehicle in your inventory that is in good condition be added to the full $2524 refund to compensate for negative bidder enjoyment." (*Id.*)

Defendant then responded that the vehicle will be picked up in the morning, and Plaintiff would receive a refund once the car was back in the yard. (*Id.* at 27.) After Defendant towed the car back, Plaintiff rejected the refund and Defendant offered to either return the vehicle or mail her a check for what she paid for the car.

"Conversion is defined as an act of wrongful dominion or control over personal property in denial of or inconsistent with the rights of another." *Case Corp. v. Gehrke*, 91 P.3d 362, 365 (Ariz. Ct. App. 2004) (citation modified). Plaintiff cannot argue Defendant wrongly repossessed her vehicle when she implicitly asked Defendant to do so by demanding a refund and complaining about Defendant leaving the vehicle in the first place. Nor can she argue Defendant wrongly retained the vehicle when it continually offered to tow the car back to her. Therefore, the Court finds Plaintiff cannot plausibly state a claim for conversion.

Alternatively, the Court finds that Plaintiff's conversion claim is barred by the economic loss doctrine. "Courts in Arizona dismiss conversion claims based on the economic loss doctrine if the harms alleged in the tort claim are based on the same alleged conduct in the contract claim." *Navajo Health Found. - Sage Mem'l Hosp., Inc. v. Razaghi Dev. Co.*, LLC, No. 2:19-CV-00329-GMN-EJY, 2022 WL 960109, at *13 (D. Nev. Mar. 30, 2022) (citing cases). As noted above, Plaintiff alleges Defendant breached its contractual obligations by seizing her vehicle. Therefore, Plaintiff cannot recover in tort what she can recover through an action on a contract. *See Cook v. Orkin Exterminating Co., Inc.*, 258 P.3d 149, 153 (Ariz. Ct. App. 2011) (holding that the economic loss doctrine barred plaintiff's tort claims and limited them "to their contractual remedies for purely economic loss"). Accordingly, the Court dismisses Plaintiff's conversion claim with prejudice.

Finally, neither Arizona nor federal law recognizes a civil cause of action for extortion. *See Watkins v. Complete Skycap Servs., Inc.*, No. CV 05-0698-PHX-ROS, 2006 WL 8440752, at *2 (D. Ariz. Feb. 6, 2006) (holding that Arizona's criminal extortion statute does not create a private right of action); *see also Brown v. Lucidworks*, No. 2:25-

CV-0607-DC-CKD (PS), 2025 WL 1695997, at *7 (E.D. Cal. June 17, 2025) (dismissing extortion claim because there is no federal private right of action).  Accordingly, the Court dismisses Plaintiff's extortion claim with prejudice.

Based on the foregoing, the Court dismisses Count III with prejudice.

### 4. *FTC Violations*

Plaintiff attempts to sue Defendant for violations of Section 5 of the FTC Act and the FTC Used Car Rule.  (Doc. 12-1 at 20.)  However, "[t]here is no private right of action under the FTC Act."  *Teeter v. Easterseals-Goodwill N. Rocky Mountain, Inc.*, No. CV-22-96-GF-BMM, 2023 WL 2330241, at *4 (D. Mont. Mar. 2, 2023) (citation modified) (quoting *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 592 (9th Cir. 2012)).

Accordingly, the Court dismisses Plaintiff's FTC claims with prejudice.

### 5. *Racketeering, Wire Fraud, and Systematic Billing Fraud*

Plaintiff alleges Defendant violated both federal and state racketeering laws.  (Doc. 12-1 at 19.)  A claim under either requires sufficient allegations demonstrating a pattern of racketeering activity.  *Piper v. Gooding & Co. Inc.*, 334 F. Supp. 3d 1009, 1019 (D. Ariz. 2018); A.R.S. § 13-2314.04(A).  Here, Plaintiff alleges Defendant engaged in pattern of wire fraud by including duplicate invoice and refund numbers and contradictory transaction dates on two receipts, thereby creating "deliberately confusing records."  (Doc. 12-1 at 20–21.)  Although wire fraud is a predicate act for both federal and state RICO claims, Plaintiff fails to adequately plead wire fraud.

"Wire or mail fraud consists of the following elements: (1) formation of a scheme or artifice to defraud; (2) use of the United States mails or wires, or causing such a use, in furtherance of the scheme; and (3) specific intent to deceive or defraud."  *Corewest Res. LLC-FZ v. Gideon Grp. Inc.*, No. CV-24-03613-PHX-SMB, 2025 WL 3637447, at *5 (D. Ariz. Dec. 16, 2025) (quoting *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 557 (9th Cir. 2010)).  Importantly, "[t]he wire fraud statute prohibits only deceptive schemes to deprive the victim of money or property."  *Children's Health Def. v. Facebook Inc.*, 546 F. Supp. 3d 909, 938 (N.D. Cal. 2021) (citation modified) (quoting *Kelly v. United States*, 590 U.S.

391, 398 (2020)). There are no allegations to suggest the two "confusing" receipts deprived Plaintiff of any money or property. Plaintiff's Complaints states the receipts reflected "phantom charges and refunds," *i.e.*, transactions that never manifested in bank statements. (Doc. 12-1 at 4.) Therefore, the only alleged injury is confusion itself. This is insufficient to establish a predicate act of wire fraud. Because Plaintiff's monetary and property injuries are related to Plaintiff's other claims—not Defendants receipt records—amendment would be futile.

"Federal courts have long since been wary of the potential for abuse of civil RICO claims, which attract plaintiffs to their treble damages and attorney's fees." *Crawford v. Countrywide Home Loans, Inc.*, No. 3:09CV247-PPS-CAN, 2011 WL 3875642, at *13 (N.D. Ind. Aug. 31, 2011). Here, Plaintiff joins other "civil RICO plaintiffs [who] persist in trying to fit a square peg in a round hole by squeezing garden-variety business disputes into civil RICO actions." *Midwest Grinding Co. v. Spitz*, 976 F.2d 1016, 1025 (7th Cir. 1992).

Accordingly, the Court dismisses Plaintiff's RICO claims with prejudice.

## IV.    LEAVE TO AMEND

"[A] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (citation modified). The Court only grants Plaintiffs leave to amend her breach of contract and breach of the implied covenant of good faith and fair dealing claims in Count II. The Court *does not* grant Plaintiff leave to amend any of her other claims, which are dismissed with prejudice as discussed above.

Plaintiff's amended complaint must follow the form detailed in Rule 7.1 of the Local Rules of Civil Procedure. Within thirty (30) days from the date of entry of this Order, Plaintiff may submit her first amended complaint. Plaintiff must clearly designate on the face of the document that it is the "First Amended Complaint." The amended complaint must be retyped or rewritten in its entirety and may not incorporate any part of the original

Complaint by reference.

The Court draws attention to the District of Arizona's Federal Court Advice Only Clinic, Federal Court Advice Only Clinic - Phoenix | District of Arizona | United States District Court (uscourts.gov). The Court also notes the E-Pro Se program which assists litigants with creating a complaint form, Welcome - eProSe (uscourts.gov). Lastly, the Court advises Plaintiff that certain resources for self-represented parties, including a handbook and the Local Rules, are available on the Court's website, www.azd.uscourts.gov, by following the link "For Those Proceeding Without an Attorney."

## V.    CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED denying** Plaintiff's Motion to Remand (Doc. 15), Motion for Constitutional Relief (Doc. 15), and Motion for Attorneys' Fees (Doc. 15).

**IT IS FURTHER ORDERED granting** Plaintiff's Application for Leave to Proceed In Forma Pauperis (Doc. 14).

**IT IS FURTHER ORDERED granting** Defendant's Motion to Dismiss (Doc. 21).

**IT IS FURTHER ORDERED** giving Plaintiff leave to amend Count II only. If Plaintiff so chooses, she shall file a First Amended Complaint no later than thirty (30) days after the date this Order is issued.

Dated this 10th day of June, 2026.

Honorable Susan M. Brnovich
United States District Judge